Filed 8/26/16  P. v. Auther CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SEAN AUTHER,<br><br>    Defendant and Appellant. | A143134<br><br>(Solano County<br>Super. Ct. No. VCR217389) |

Sean Auther was convicted by a jury of one count of possession of a controlled substance.  He contends the court erred in denying his motion to suppress evidence and ordering him to pay $2000 in attorney's fees.  The court properly denied the motion to suppress, but we agree that lack of notice regarding Mr. Auther's potential responsibility for attorneys' fees invalidates the fee order.  Accordingly, we affirm the judgment but strike the fee order.

**BACKGROUND**

The following evidence was introduced at the combined preliminary hearing and motion to suppress.  On the night of March 23, 2013, Solano County Sheriff's Deputy Coy Caulfield was on patrol with his partner when he observed Auther riding a bicycle in front of the patrol car, traveling the same direction.  As Deputy Caulfield approached a four-way intersection marked with stop signs in each direction he saw Auther ride through the intersection without stopping.

Caulfield stopped Auther and asked him to provide identification.  Auther said he did not have any identification on him and refused to give the officer his name.    The

1

officer smelled marijuana, so he asked Auther "if he had something."  Auther said there was methamphetamine in his pocket.  A search produced two baggies containing methamphetamine and a small amount of marijuana.  Auther was read his *Miranda* rights, said he understood them, and told Officer Caulfield he did not stop because he didn't see any headlights approaching the intersection.  He also said the methamphetamine was for his personal use and that he does not sell it.  He was subsequently charged with one count of possessing a controlled substance.

Auther's friend Joseph Manibusan testified that on the night Auther was stopped he, Auther and some other friends were playing ping-pong in a garage across the street from Manibusan's house on Fulton Street.  As Auther started to leave on foot around 10:30 p.m., Manibusan called him back and offered him a bicycle he could ride home.  When Manibusan gave Auther the bike, the two men were about 10 feet from a stop sign at the intersection of Fulton and Ridge.   Auther rode the bicycle in a circle, stopped five to ten feet from the stop sign to thank Manibusan and shake his hand, then rode away through the intersection.

Wes Lancaster was part of the group in the garage that night.  He also testified that Auther was five to 10 feet from the intersection when Manibusan gave him the bicycle, and that he rode in a circle, stopped to thank Manibusan, and then rode off through the intersection.

At the suppression hearing defense counsel argued the stop was unjustified because Auther lawfully stopped his bicycle about five feet away from the stop sign.  The magistrate disagreed, and explained: " I don't find that this was a stop at the limit line for purposes of analyzing this. [¶] I know that if I were at an intersection and a car was five feet behind and then stopped, then came back up to the line, I would expect that car to stop at the limit line before I chose to go. [¶] So, any event, I'm not aware of any clear line that says it has to be within X feet, but here I don't find it was a stop at the limit line such that it would be unreasonable for the officer to make the detention.  I find the officer had reasonable suspicion to detain the defendant for this violation."

2

Auther renewed his motion to suppress pursuant to Penal Code section 1538.5,[1] again without success.  The trial court stated:  "It's an interesting argument. . . .  I do think, when you think about it, in some circumstances there could be a problem with the vagueness of that statute in this context. [¶] Having said that, it seems to me that in finding all the witnesses were credible, what Judge Kam did is basically find that your client did make a stop but made a stop five feet away, not at what he thought was the intersection or the line, which is consistent with what your witnesses said and that based upon the specific [] facts that he considered he found that in that instance under those circumstances, that that was a—it was not unreasonable for the officer to deem that a violation and therefore he had probable cause, or had reasonable basis to proceed and make the stop. [¶] You know, five different people, based upon their driving habits, might have made five different findings.  But I do think, given that's what the magistrate did, I don't think it's my place in the universe to upset the factual analysis of the magistrate. [¶] You have an interesting legal argument about whether or not that statute is vague.  But I don't think that, ultimately, I don't think, that that changes the analysis I just made."

Auther was convicted as charged, sentenced to three years' probation, and ordered to pay attorneys' fees of $2,000 pursuant to section 987.8.  This timely appeal followed.

### DISCUSSION

### I. Motion to Suppress

### A. Legal Principles

Where a motion to suppress is submitted to the superior court on the preliminary hearing transcript, "the appellate court disregards the findings of the superior court and reviews the determination of the magistrate who ruled on the motion to suppress, drawing all presumptions in favor of the factual determinations of the magistrate, upholding the magistrate's express or implied findings if they are supported by substantial evidence, and measuring the facts as found by the trier against the constitutional standard of

---

[1] Unless otherwise noted, further statutory citations are to the Penal Code.

reasonableness." (*People v. Thompson* (1990) 221 Cal.App.3d 923, 940.) We independently review the law and its application to the facts (*People v. Carter* (2005) 36 Cal .4th 1114, 1140) and affirm the trial court's ruling if correct under any legal theory. (*People v. Zapien* (1993) 4 Cal.4th 929, 976.)

With regard to a traffic stop, "Under the cases, an officer may stop and detain a motorist on reasonable suspicion that the driver has violated the law. [Citations.] The guiding principle in determining the propriety of an investigatory detention is 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' [Citations.] In making our determination, we examine 'the totality of the circumstances' in each case." (*People v. Wells* (2006) 38 Cal.4th 1078, 1082–1083.)

Vehicle Code section 22450, subdivision (a) provides that "The driver of any vehicle approaching a stop sign at the entrance to, or within, an intersection shall stop at a limit line, if marked, otherwise before entering the crosswalk on the near side of the intersection. [¶] If there is no limit line or crosswalk, the driver shall stop at the entrance to the intersecting roadway." Pursuant to Vehicle Code section 21200, subdivision (a), bicycle riders are subject to all provisions of the Vehicle Code applicable to drivers.

### B. Analysis

Auther's argument is premised on what he views as uncertainty as to the meaning of the Vehicle Code requirement that a driver (or, as in this case, cyclist) must stop "at" the limit line, or if there is no limit line or crosswalk, "at" the entrance to the intersection. (See Veh. Code, § 22450, subd. (a).) Observing that Vehicle Code section 22450 does not state how close the driver must come to the limit line, crosswalk or intersection to be deemed "at" it, he asserts the court should have used the dictionary definition of "at" as meaning "in, on, or near," and thus ruled that "a stop five feet from the entrance of the intersection is 'at' the intersection for purposes of Vehicle Code section 22450, subdivision (a)." This interpretation, he argues, both complies with the rule of lenity and avoids the veritable Zeno's paradox that arises from interpreting "at" to signify a precise point, as the People maintain, because "it is actually a physical impossibility" to stop a

4

car at a precise point "as there always exists a measureable distance between two objects."

We need not resolve this interesting question because the determinative issue is whether Deputy Caulfield reasonably believed Auther violated a traffic law. "[A] police officer can legally stop a motorist only if the facts and circumstances known to the officer support at least a reasonable suspicion that the driver has violated the Vehicle Code or some other law." (*People v. Miranda* (1993) 17 Cal.App.4th 917, 926 (italics omitted).) " 'If the facts are sufficient to lead an officer to reasonably believe that there was a violation, that will suffice, even if the officer is not certain about exactly what it takes to constitute a violation.' " (*In re Justin K.* (2002) 98 Cal.App.4th 695, 700.) "When assessing the reasonableness of a traffic stop, the question is not whether appellant actually violated the Vehicle Code, but whether there was some ' "objective manifestation" that [he] may have' violated the Vehicle Code." (*People v. Durant* (2012) 205 Cal.App.4th 57, 63, italics omitted.)

Here, Deputy Caulfield testified he saw Auther ride through the intersection without stopping at the stop sign. The magistrate found Caulfield's testimony credible, and on that basis found the officer had a reasonable basis to believe Auther had violated the law. Thus, even were we to assume a stop five feet from a stop sign satisfies section 22450—to be clear, we do not decide that issue—the detention was justified by the officer's observation of an apparent violation. Substantial evidence supports the magistrate's findings that Deputy Caulfield reasonably believed Auther failed to stop as required. The suppression motion was properly denied.

## II. Attorney's fees

Auther contends the trial court violated his due process rights when it ordered him to pay for court-appointed attorney's fees without providing him the notice and opportunity to be heard required by statute. The People concede that the court failed to give adequate advisements, but contend Auther was not prejudiced. We disagree.

5

*Background*

At the arraignment the court inquired about Auther's employment and income. When Auther said he had none, the court offered to appoint the public defender but gave no indication that Auther might be responsible for attorney's fees. There is no further mention of that possibility in the record until the sentencing hearing, at which, after deciding Auther was able to work, the trial court imposed attorney's fees of $1500 for the first day of trial and $500 for the second. The court said, "If he does have a problem where he cannot work, then obviously he has a right to a hearing on all of this. . . . Obviously, he has the right to a hearing on all of this. That can be scheduled if need be."

*Analysis*

Proceedings to charge a criminal defendant with paying attorney's fees involve the taking of property and therefore require due process of law, including notice and a hearing. (*People v. Smith* (2000) 81 Cal.App.4th 630, 637 (*Smith*).) To that end, section 987.8, subdivision (f) directs that "[p]rior to the furnishing of counsel or legal assistance by the court, the court shall give notice to the defendant that the court may, after a hearing, make a determination of the present ability of the defendant to pay all or a portion of the cost of counsel. The court shall also give notice that, if the court determines that the defendant has the present ability, the court shall order him or her to pay all or a part of the cost. The notice shall inform the defendant that the order shall have the same force and effect as a judgment in a civil action and shall be subject to enforcement against the property of the defendant in the same manner as any other money judgment." These provisions mandate that prior to the appointment of counsel the defendant receive ' "notice reasonably calculated, under all the circumstances" ' to apprise him of the potential of his liability for the costs of legal representation and of the possible effects of an order to pay such costs." (*Smith* at p. 637.)

Here, the People concede that Auther was not advised pursuant to section 987.8, subdivision (f) before counsel was appointed. Instead, relying on *Smith*, they assert the error was not prejudicial because, as Auther had a colorable claim for a suppression motion, there is no basis to infer he would have foregone appointed counsel had he been

properly advised about his potential responsibility for fees. But *Smith* is inapposite. First, the defendant there had actual notice (even though technically inadequate) that he might have to pay his appointed counsel's fees. (*Smith, supra*, 81 Cal.App.4th at pp. 637–639.) Here, by contrast, there was a total failure to warn Auther of that possibility. Second, Smith did not claim he was prejudiced by the lack of notice and, specifically, did not suggest he would have foregone representation by appointed counsel had he been advised of his potential obligation to pay attorney's fees. (*Id.* at p. 639.) Here, Auther asserts he might have decided to plead at the time of the arraignment if the court had warned him he could be liable for attorney's fees. Even if, as the People suggest, it is illogical to suppose Auther would have declined appointed counsel to bring the motion to suppress, we cannot so readily dismiss his point that, once he lost that motion, he might well have declined to exercise his right to a jury trial had he known that doing so could subject him to thousands of dollars in attorney's fees.

Relying on *People v. Scott* (1994) 9 Cal.4th 331 (*Scott*), the People assert Auther waived the lack of notice by failing to object when the court imposed fees at the sentencing hearing. We disagree. By that time it was too late to rectify the error; no objection would have magically transported Auther back in time to the arraignment to decline appointed counsel. In any event, it would be unrealistic and unfair to charge defense counsel with knowing at the sentencing hearing that Auther had not been sufficiently advised under section 987.8, subdivision (f) *before he was represented by counsel.* Even *Scott*, which held that failure to object to a sentencing court's failure to articulate discretionary sentencing choices waives the issue on appeal, conditioned that finding of waiver on the existence of "a meaningful opportunity to object to the kinds of claims otherwise deemed waived by today's decision." (*Scott* at p. 356) There was no such opportunity here and no possibility that a remand could cure the due process violation. Accordingly, the fee order must be stricken. This conclusion dispenses with the need to reach Auther's further arguments that (1) there was insufficient evidence to support the finding of ability to pay fees, and (2) the trial court failed to determine the actual cost of Auther's representation.

7

## DISPOSITION

The judgment is affirmed except as to the order requiring Auther to pay attorney's fees, which we order stricken.

_____
Siggins, J.

We concur:

_____
Pollak, Acting P.J.


_____
Jenkins, J.

8